IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY L. SMITH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-CV-1026 (ESH) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2) .    In my official capacity as Section Chief of RIDS, I supervise approximately 232 employees who staff a total of ten (10) units and a field operational service center unit whose

1

collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the plaintiff's November 23, 2004, January 31, 2006 and March 30, 2006 Freedom of Information Act/Privacy Act ("FOIPA") requests seeking access to records from the FBI, as well as plaintiff's February 13, 2006 letter, which was not a FOIPA request, but instead was a request seeking statutory and congressional authority to investigate anyone within the United States.

(4)    The purpose of this declaration is to support defendant FBI's motion for summary judgment.

## CORRESPONDENCE RELATING TO PLAINTIFF'S REQUEST

(5)    By letter dated November 23, 2004, to FBI, Atlanta Field Office ("ATFO"), Gary L. Smith requested "all documents regarding seizure number 3040-02-F-0133, including but not limited to: inventory lists, disposition of item seized, and location of items seized." Mr. Smith also requested "the investigative notes and associated files, related search warrants and affidavits

and the identity of all agents, officers, etc. involved with this seizure." He also requested a

waiver of fees. (See Exhibit A.)

(6)    By letter dated December 6, 2004, FBI Headquarters (FBIHQ) acknowledged

receipt of plaintiff's November 23, 2004 FOIPA request. Plaintiff was advised that his request

was forwarded to FBIHQ from the ATFO. Plaintiff was also advised his request had been

assigned FOIPA number 1009611. (See Exhibit B.)

(7)    By letter dated February 26, 2005, plaintiff stated. "It was been well past the

twenty (20) days specified under 5 U.S.C. § 552(a)(6)(A)(i) and with an extension of ten (10)

days as specified in § 552(a)(b)(B) of the same title. There was no notification to me that a delay

in the request would be needed." Plaintiff stated that if the FBI could not or would not provide

the requested information he would initiate action within the local District Court. (See Exhibit

C.)

(8)    By letter dated March 24, 2005, plaintiff stated that he had exhausted his

administrative remedies and that this letter would serve as formal notice that he had

acknowledged the FBI's refusal to supply the requested information. Plaintiff also advised that

he would file a complaint with the United States District Court in West Virginia within thirty

(30) days of this notice. (See Exhibit D.)

(9)    By letter dated April 21, 2005, FBIHQ acknowledged receipt of plaintiff's March

24, 2005 letter.[1] Plaintiff was advised that the material he requested in his November 23, 2004

FOIPA request to the ATFO was located in an investigative file that was exempt from disclosure

---

[1]A second letter with the same information and also dated April 21, 2005 was
inadvertently sent to plaintiff.

pursuant to Title 5, United States Code, Section 552, subsections (b)(7)(A) and (b)(7)(C).

Plaintiff was also advised he could appeal this denial by writing to the Co-Director, Office of

Information and Privacy ("OIP"), United States Department of Justice (DOJ).  (See Exhibit E.)

(10)    By letter dated January 31, 2006, plaintiff submitted a FOIPA request to FBIHQ

for the following information: All documents, photographs, investigative notes and the like

contained in File No. 305A-BA-80998-E6522-KC; any adverse action reports on Special Deputy

U. S. Marshal Cameron Roe; copies of forensic examinations used to secure search warrant 2:02-

M-026, used to seize property of Gary L. Smith at 4417 Waterworks Road, Jefferson, Jackson

County in the Northern District of Georgia; copies of photographs used to secure above reference

search warrant; any and all reports from the Georgia Bureau of Investigations; any documents,

photographs, investigative reports, notes or the like on or in any file that references Gary L.

Smith; any other information that may be related to Gary L. Smith and not contained in any

official file, no matter how temporary or inconsequential in nature.  Plaintiff also requested a

waiver of fees associated with this request.  This request was assigned FOIPA No. 1039550.

(See Exhibit F.)

(11)    By letter dated February 13, 2006,[2] plaintiff requested copies of the following

information: "Statutory (i.e. United States Code "U.S.C."; Code of Federal Regulations, "C.F.R.";

Public-law etc.) authority to investigate anyone with the United States (corporate) or United

States of America; and Congressional authority to investigate."  Plaintiff also requested a waiver

---

[2] This letter could not be located at FBIHQ.  A copy of this document was provided by
plaintiff as Exhibit 6 to his complaint.

4

of fees for the production of these documents.[3]  (See Exhibit G).

(12)    By letter dated March 6, 2006, FBIHQ advised plaintiff that a search of the automated indices to the central records system files at FBIHQ located no records responsive to his FOIPA request 1039550, dated January 31, 2006.  Plaintiff was also advised that he was entitled to file an administrative appeal with OIP.  (See Exhibit H.)

(13)    By letter dated March 30, 2006, plaintiff submitted a FOIPA request "for the production of a detailed indexing of all records, objects and/or communications within your agency."  Plaintiff also requested, "pursuant to Vaughn v Rosen, 484 F.2d 820 (D.C. Cir 1973): Copies of any and all documents or materials taken from any of my homes (Chicago, IL or Jefferson, GA), place(s) of business or other areas where it is claimed I had a proprietary interest on which is in any way related to myself, by either federal and/or state agents and agencies, acting with or without a warrant; copies of any and all warrants, orders, inventories, memorandum or any other documents obtained or created in connection with myself; any and all documents, materials, photographs, films, publications or computer data which was seized or copied; and any results or reports of physical or mental examinations, scientific tests or experiments or copies of them, including but not limited to handwriting exemplars, photographs, fingerprints or other similar materials in possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known, which are related in any way to myself."  Plaintiff also states that "this request should also include any temporary files on your agency's computer network that haven't been placed formally with my

_____

[3]    Because FBIHQ considered this request to be a request for information outside of FOIPA, a FOIPA request was not opened and a FOIPA number was never assigned to this request.  See infra ¶ (14) for FBIHQ's response to plaintiff.

records, including any and all e-mails, or other inter- and intra- department and /or agency communications." **(See Exhibit I.)**

(14)    By letter dated May 2, 2006,[4] FBIHQ advised plaintiff the FOIPA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data, and therefore the questions posed in plaintiff's letter dated February 13, 2006, were not FOIPA requests because they did not comply with the FOIPA and its regulations. **(See Exhibit J.)**

(15)    By letter dated August 4, 2006, FBIHQ advised plaintiff that a search of the automated indices to the central records system files at FBIHQ located no records responsive to his March 30, 2006 FOIPA request. Plaintiff was also advised that he was entitled to file an administrative appeal with OIP. **(See Exhibit K.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(16)    The Central Records System ("CRS"), which is utilized by the FBI to conduct searches in response to FOIA and Privacy Act requests, enables it to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in the CRS are maintained at FBIHQ. Records that are pertinent to specific field offices

---

[4] This letter could not be located at FBIHQ. A copy of this document was provided by plaintiff as Exhibit 9 of his complaint.

of the FBI are maintained in those field offices.

(17)    Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:

> (a) A "main" entry -- A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
> (b) A "reference" entry --"Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(18)    Access to the CRS files in FBI field offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a particular subject, such as Gary L. Smith, are made by searching the subject requested in the index. FBI field offices have automated indexing functions.

(19)    On or about October 16, 1995, the Automated Case Support ("ACS") system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ. Over 105 million records were converted from automated systems previously utilized by the FBI. The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens

7

a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs") –

formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal

Case File Number ("UCFN"), which is utilized by all FBI field offices, Legats, and FBIHQ that

are conducting or assisting in the investigation. Using a fictitious file number "111-HQ-12345"

as an example, an explanation of the UCFN is as follows: "111" indicates the classification for

the specific type of investigation; "HQ" is the abbreviated form used for the OO of the

investigation, which in this case is FBIHQ; and "12345" denotes the individual case

file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository

for the FBI's official text-based documents. ECF supports the universal serial concept, in that

only the creator of a document serializes it into a file. This provides a single-source entry of

serials into the computerized ECF system. All <u>original</u> serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by

providing a complete subject/case index to all investigative and administrative cases. Only the

OO is required to index; however, the LOs may index additional information as needed. UNI, an

index of approximately 94.6 million records, functions to index names to cases, and to search

names and cases for use in FBI investigations. Names of individuals or organizations are

recorded with identifying applicable information such as date or place of birth, race, sex, locality,

Social Security number, address, and/or date of event.

(20)     The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the FBI Special Agent ("SA") assigned to work on the

investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and

the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Gary L. Smith.

### SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'(S)' REQUEST

(21)    In response to plaintiff's November 23, 2004 request to the ATFO, which was assigned FOIPA number 1009611, a search of the automated indices at ATFO revealed the material plaintiff requested was located in an open investigative file. ATFO forwarded Plaintiff's request to FBIHQ, and FBIHQ processed and responded to Plaintiff's request, stating that the material located in the ATFO's open investigative file was exempt from disclosure pursuant to Title 5, United States Code, Section 552, subsections (b)(7)(A) and (b)(7)(C).

(22)    By letter dated April 21, 2005, plaintiff was informed by FBIHQ of his right to appeal the denial of the material requested in his November 23, 2004, FOIPA request. A search of FOIPA records at FBIHQ revealed no record of an appeal being filed by plaintiff. Pursuant to a telephone call between FBIHQ and OIP on July 20, 2006, OIP confirmed that there is no record of an appeal in regards to plaintiff's FOIPA request dated November 23, 2004. In this instance, the plaintiff failed to exhaust his administrative remedies with regard to FBIHQ's denial of records.

9

(23)    In response to plaintiff's January 31, 2006 request which was assigned FOIPA number 1039550, a search of the automated indices was conducted at FBIHQ on Gary L. Smith. FBIHQ searched the CRS using plaintiff's name in order to locate any main investigatory files maintained at HQ. A search of the CRS by using the name "Gary L. Smith" would result in a search that would cover a breakdown of the name. For example, this particular name search would locate records relating to the following names: "Smith, Gary, L.;" "Smith, Gary;" "Smith, G. L.;" and "Smith, L." FBIHQ's search also included the use of plaintiff's date of birth and Social Security number to identify responsive records. This search located no records responsive to plaintiff's request. All places reasonably likely to contain responsive documents were searched, but no records were found. In addition, upon receipt of plaintiff's civil complaint, another search of the automated indices at FBIHQ was conducted on July 14, 2006, using the same search mechanism described above. This additional search again located no records responsive to plaintiff's request.

(24)    By letter dated March 6, 2006, FBIHQ informed plaintiff that he was entitled to appeal the response to his FOIPA request dated January 31, 2006, even though no records responsive to his request were located. A search of FOIPA records at FBIHQ revealed no record of an appeal being filed by plaintiff. Pursuant to a telephone call between FBIHQ and OIP on July 20, 2006, OIP confirmed that there is no record of an appeal in regards to plaintiff's January 31, 2006 FOIPA request. In this instance, the plaintiff failed to exhaust his administrative remedies with regard to FBIHQ's no records response.

(25)    Plaintiff's February 16, 2006 letter which was received on March 2, 2006 by FBIHQ was determined to not qualify as a FOIPA request. As such, a FOIPA number was never

10

assigned to this request. Because the FBI did not consider the plaintiff's letter a valid FOIPA request, as stated in the letter to Plaintiff dated May 2, 2006, no search for information was conducted.

(26)    The FBI had not responded to plaintiff's March 30, 2006 request prior to his civil complaint being filed. Like plaintiff's January 31, 2006 request, plaintiff's March 30, 2006 request involved searching plaintiff's name to locate information. Thus, on July 14, 2006, in response to plaintiff's March 30, 2006 request, a search of the automated indices was conducted at FBIHQ on Gary L. Smith. As described above, FBIHQ searched the CRS using plaintiff's name in order to locate any main investigatory files maintained at HQ. A search of the CRS by using the name "Gary L. Smith" would result in a search that would cover a breakdown of the name. For example, this particular name search would locate records relating to the following names: "Smith, Gary, L.;" "Smith, Gary;" "Smith, G. L.;" and "Smith, L." FBIHQ's search also included the use of plaintiff's date of birth and Social Security number to identify responsive records. All places reasonably likely to contain responsive documents were searched, but the search located no records at FBIHQ responsive to plaintiff's request. A letter dated August 4, 2006 was mailed to plaintiff concerning the latest search results in response to his March 30, 2006 FOIPA request. (See Exhibit K.) In accordance with Title 28, Code of Federal Regulations, Section 16.3(a) & 16.41(a), the letter stated that if the plaintiff feels that records could be located at a specific FBI field office, he should make a request to have that field office searched.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through K attached hereto are true and correct copies.

11

Executed this _____4th_____ day of August, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.